# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raquel Escalante, | No. CV-25-00339-TUC-RCC (LCK) |
| Plaintiff, | **ORDER** |
| v. | |
| Vicar Operating Incorporated, et al., | |
| Defendants. | |

On June 12, 2026, Magistrate Judge Lynnette C. Kimmins issued a Report and Recommendation ("R&R") in which she recommended the Court dismiss Plaintiff Raquel Escalante's Second Amended Complaint ("SAC") with prejudice. (Doc. 55.) The Magistrate Judge informed the parties they had fourteen days to file objections and an additional fourteen days to respond. (*Id.* at 15.) Plaintiff filed an objection (Doc. 56), and Defendants Vicar Operating Incorporated, Jay Rising, and Amy Bottari filed a response (Doc. 57). The Court has conducted a de novo review of the portions of the R&R to which Plaintiff objects. For the reasons stated herein, the Court adopts the R&R and dismisses this matter with prejudice.

## I. STANDARD OF REVIEW

### a. Report & Recommendation

The standard of review of a magistrate judge's R&R is dependent upon whether a party objects: where there is no objection to a magistrate's factual or legal determinations, the district court need not review the decision "under a de novo or any other standard." *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (emphasis removed). However, when a party

objects, the district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). Moreover, "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard." *Thomas*, 474 U.S. at 154 (emphasis removed).

### b. Motion to Dismiss

Avoiding dismissal on a motion to dismiss requires that the plaintiff provide a short statement showing entitlement to relief, meaning the allegations need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (citation omitted); *Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir. 2004) (applying Rule 8 pleading standard to a Title VII and § 1981 motion to dismiss). While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief [is] . . . a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed a Complaint and subsequently filed a First Amended Complaint prior to Defendants' answer. (Docs. 1, 18.) The First Amended Complaint included allegations against Defendants Vicar Operating Incorporated (d/b/a VCA) and individuals Jay Rising and Amy Bottari, among others. (Doc. 18 at 2–3.) The Magistrate Judge issued an R&R

recommending that the Court grant Defendants' Motion to Dismiss. (Doc. 44.) The Court adopted the R&R and dismissed all claims against all individual Defendants with prejudice—only Plaintiff's Title VII claim against VCA was dismissed without prejudice. (Doc. 48.)

Plaintiff's SAC alleges Title VII discrimination and retaliation, and violations of Arizona Revised Statutes §§ 23-425 and 13-2923 against VCA Valley Pet Resort, Rising, and Bottari. (Doc. 50.) The Court will first address the state statues.

### a. A.R.S. § 13-2923

In the R&R, the Magistrate Judge explained that the state criminal stalking statute, A.R.S. § 13-2923, does not provide a private right of action in a civil matter, and therefore this claim should be dismissed with prejudice. (Doc. 55 at 5.) Plaintiff does not challenge the Magistrate's analysis. Instead, Plaintiff defines how, under the elements of the offense, Defendant Bottari stalked her. (Doc. 56 at 3–4.) The Magistrate Judge's conclusion stands. Plaintiff cannot bring a civil claim of stalking based on this criminal statute, and amendment is futile.

### b. A.R.S. § 23-425

Arizona Revised Statute § 23-425, the Magistrate Judge noted, relates to retaliation for failing "to comply with occupational safety and health standards that threaten harm." (Doc. 55 at 5.) The Magistrate Judge concluded that since the SAC contained no facts related to a complaint about safety standards, this claim must be dismissed. (*Id.*) In addition, like the stalking statute, there is no private right of action for this statute either, the Magistrate stated, so dismissal should be with prejudice. (*Id.* at 6 ("the remedy for alleged retaliation is for the employee to file a complaint with the Industrial Commission of Arizona," which then can bring a state court claim "on behalf of the employee").) Plaintiff's objection does not address or challenge the Magistrate's determination about A.R.S. § 23-425. The Court agrees with the Magistrate Judge that Plaintiff has failed to state a claim and this failure cannot be remedied with amendment.

### c. Individual Defendants

The Court previously adopted the Magistrate Judge's first R&R, which

recommended dismissing the Title VII claims against individual Defendants Amy Bottari and Jay Rising with prejudice because Title VII does not permit lawsuits against individuals. (Doc. 48; Doc. 44 at 14 (citing *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007).) Plaintiff's objection states that her SAC included the formerly dismissed Defendants because they "were the individuals that conducted themselves unprofessionally when they held positions of power and should be held accountable for their parts in this lawsuit despite the court recommending otherwise." (Doc. 56 at 6.)

Plaintiff's argument does not undermine the Magistrate Judge's legal determination or overcome the dismissals with prejudice. Title VII prohibits discrimination by an "employer," but it does not allow for individual liability. *Ortez v. Washington Cnty., State of Or.*, 88 F.3d 804, 808 (9th Cir. 1996). Since Plaintiff cannot sue these individuals under Title VII, and the state law claims are not viable, all claims against Bottari and Rising will again be dismissed with prejudice.

### d. Title VII

Plaintiff's Title VII allegations of disparate treatment, constructive discharge, and retaliation cannot withstand a motion to dismiss.

#### i. Disparate Treatment

Title VII of the Civil Rights Act of 1964 proscribes employment discrimination based on race, color, and national origin. 42 U.S.C. § 2000e *et seq*. "A disparate treatment claim must plead facts demonstrating '(1) the plaintiff belongs to a protected class, (2) [s]he was performing according to [her] employer's legitimate expectations, (3) [s]he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action [that] give[s] rise to an inference of discrimination.'" *Vasquez v. Piper Sandler & Co.*, No. CV-22-00473-TUC-RCC, 2024 WL 4364147, at *4 (D. Ariz. Sept. 30, 2024) (quoting *Reynaga v. Rosenburg Forest Products*, 847 F.3d 678, 691 (9th Cir. 2017)). "A plaintiff is not required to plead (or pursue) a comparator evidence theory of discrimination," but can "show an inference of discrimination in whatever manner is appropriate in the particular circumstances." *Martin v. Arizona State Sch. for the Deaf and the Blind*, No. CV-24-00281-

- 4 -

TUC-EJM, 2025 WL 918371, at *5 (D. Ariz. Mar. 26, 2025) (first citing *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010); then citing *Littlejohn v. Kaiser Foundation Health Plan of Wash.*, No. 3:23-cv-06194-TMC, 2024 WL 4451955, at *5 (W.D. Wash. Oct. 9, 2024)).

While a claimant in an employment discrimination lawsuit need not establish a prima facie case of discrimination to withstand a motion to dismiss, they must include enough facts to show they are "entitled to relief." *Swierkiewicz*, 534 U.S. at 510-11 (quoting Fed. R. Civ. P. 8(a)(2)). "The issue [on a motion to dismiss] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* at 511. So, at this stage, a claimant's allegations need only "nudge . . . the claim across the line from conceivable to plausible." *Al-Kidd v. Ashcroft*, 580 F.3d 949, 976 (9th Cir. 2009), *rev'd on other grounds sub nom., Ashcroft v. Al–Kidd*, 131 S. Ct. 2074 (2011).

For Plaintiff's disparate treatment claim, the Magistrate Judge indicated that Plaintiff had not sufficiently pled an adverse employment action. (Doc. 55 at 7–10.) The Magistrate reiterated that "an adverse employment action is one that 'materially affects the compensation, terms, conditions, or privileges of employment." (*Id.* at 7 (quoting *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018)). First, the Magistrate Judge conceded that written warnings can sometimes be considered adverse employment actions, but that a written warning, standing alone, was insufficient. (*Id.* at 8–9.) Here, the Magistrate concluded "the written warnings [against Plaintiff] did not affect the terms of her employment, she had no change to her duties or compensation," therefore there was no adverse action. (*Id.* at 8.) In addition, the Magistrate stated Plaintiff's claim that a manager ignored her constituted "[m]ere ostracism in the workplace," and was not considered an adverse employment action. (*Id.* at 7 (quoting *Manatt v. Bank of Am., NA*, 339 F.3d 792, 803 (9th Cir. 2003).) Finally, the Magistrate stated that Plaintiff's allegation that VCA changed her compensation for working two roles during one shift ("stacked shifts") was not discriminatory because the change in policy applied to all employees. (*Id.*)

Plaintiff's objection argues that "she suffered an adverse employment action by way

- 5 -

of not being compensated for work she was previously compensated for" and that "[o]nly further investigation on the defendants will we [sic] determine if she was in fact the only one that was affected by this change." (Doc. 56 at 4.) She also argues Defendants took adverse action against her because she was given "extra work on top of normal duties with no compensation which had been available prior to filing the complaint with HR." (*Id.* at 4–5.)

Plaintiff has sufficiently alleged membership in a protected class by stating she is a Native American woman. For the purposes of the motion, the Court finds, without deciding, Plaintiff sufficiently pled she was meeting her employer's expectations: Plaintiff points to performance reviews in 2020–2022 in which she "exceeded expectations" or "fully met expectations," and disputes the legitimacy of later performance criticisms. The dispositive deficiencies lie in the allegations of adverse employment action and discriminatory intent. Plaintiff's alleged adverse employment actions include written warnings; schedule changes and unoffered coverage of other's shifts; denial of additional compensation for stacked shifts; denial of promotion; and constructive discharge. (Doc. 50-1 at 4–5; Doc. 56 at 4.)

### 1. Written Warnings

Plaintiff's SAC describes three written warnings: (1) a May 2023 written warning regarding attendance; (2) a February 28, 2024 written warning for "excessive tardiness"; and (3) an April 10, 2024 "final written warning" addressing alleged performance issues. (Doc. 50-1 at 4–9.) Plaintiff contends that many of the cited absences or tardies were justified or approved and that management's characterization of her reliability was unfair. (*Id.*)

Warning letters that carry no employment consequences are not adverse employment actions. *See Overton v. Mayorkas*, 754 F. Supp. 3d 862, 874 (D. Ariz. 2024) (reprimand letter was not adverse because it imposed no consequences and would be removed after two years); *Moore v. Marriott Int'l, Inc.*, No. CV-12-00770-PHX-BSB, 2014 WL 5581046, at *10–11 (D. Ariz. Oct. 31, 2014) (written warning was not adverse because there were no change to terms of employment).

- 6 -

The SAC does not link any of the warnings to an adverse employment action. She has not shown the warnings: (1) changed Plaintiff's compensation, benefits, title, responsibilities, or hours; (2) were disseminated beyond her immediate supervisors; or (3) were used as the basis for subsequent discipline such as suspension or termination.

>   2. *Schedule Changes, Unoffered & Stacked Shifts, and Ostracism*

Plaintiff alleges that manager Shanna Burhans twice ignored her, leaving Plaintiff feeling humiliated. (Doc. 50-1 at 5.) Plaintiff also generally asserts that she was subjected to schedule changes and denied the opportunity to cover another employee's shift that was given to a white coworker. (*Id.* at 4–7.) However, she has not connected any action affecting her schedule to a material change in her compensation, hours, or privileges of employment. Not being asked to cover another employee's shift is a work assignment determination — here, the denial of an unentitled work opportunity. Because Plaintiff had no expectation or entitlement to this work, there is no material change to Plaintiff's compensation, terms, conditions, or privileges of employment and no adverse action. *See cf. Kim v. Potter*, 474 F. Supp. 2d 1175, 1189 (D. Haw. 2007) (finding adverse employment action because "[d]enial of holiday overtime work, out-of-schedule assignments, and denial of premium pay due to a change in schedule all result in a loss of *otherwise-expected* compensation and thus affect the terms, conditions, and privileges of [the plaintiff's] employment") (emphasis added); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (finding adverse action where overtime was repeatedly offered to white co-workers with less seniority than the claimant).

Moreover, the Magistrate Judge correctly concluded that feeling ignored is not an adverse employment action. *See Manatt*, 339 F.3d at 803.

In addition to an adverse employment action, Plaintiff must also plead facts that suggest the actions were taken because of her race, and that similarly situated employees outside her protected class were treated more favorably, or other facts implying discriminatory intent. Plaintiff asserts she was Native American and that other non-Native employees were not treated similarly. Plaintiff describes white coworkers "Carol" and "Jane," who she claims exhibited poor work ethic, tardiness, or misconduct, but who were

not held to the same standards, were disciplined less harshly, and were permitted more flexible schedules. (Doc. 50-1 at 6–7.) But, the SAC does not describe Carol's or Jane's positions, responsibilities, performance histories, or disciplinary records in a way that would allow the Court to infer they were similarly situated to Plaintiff. Therefore, Plaintiff does not tie any particular adverse employment action—such as a denied promotion or a defined pay reduction—to a contemporaneous, more favorable decision for a similarly situated white employee.

Plaintiff's objection disagrees with the Magistrate's conclusion that the change in compensation for a stacked shift could not be an adverse employment action because it applied unilaterally to all employees. (Doc. 56 at 4.) She claims whether it was applicable to all employees is a question that should be determined in discovery. (*Id.*) Her SAC belies this assertion; however, as she alleges she encouraged her coworkers to ask for compensation and "it was clear that *we* would no longer be compensated [double for stacked shifts] for our time." (Doc. 50-1 at 7 (emphasis added).) The Court agrees with the Magistrate, Plaintiff has not shown this action was discriminatory because it applied to all employees. Plaintiff cannot alter this fact in a third amended complaint to allege the change only applied to her, this would be directly contradictory and impermissible. *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–59 (9th Cir. 2007) (noting that a court may compare complaints to decide whether an allegation is plausible).

These allegations lack the specificity required to plausibly demonstrate discriminatory intent or similarly situated individuals treated differently. Plaintiff's conclusory statements are insufficient to put VCA on notice of any adverse employment action.

### 3. Failure to Promote

The Magistrate indicated that Plaintiff's claim of discrimination for failing to promote was not viable because she had not identified any promotion (1) that was available, (2) that she qualified for, or (3) that was given to a less qualified individual. (Doc. 55 at 9–10 (first citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004); then citing *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002)).)

Plaintiff responds that the SAC pled that "she was passed over in favor of white workers by not being offered to cover a shift that she otherwise would be obligated to cover" and was "denied overtime shifts." (Doc. 56 at 5.) Plaintiff does not identify any specific open position for which she was qualified, allege that she applied or expressed interest in a particular promotion, or allege that a less-qualified coworker outside her protected class was promoted instead during the relevant period. One shift is not the equivalent of a promotion and, as discussed previously, under these circumstances, she has not shown that one shift qualifies as an adverse action.[1]

ii. Constructive Discharge

For constructive discharge, a court must ask "[d]id [the] working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998)) "Where a plaintiff fails to demonstrate the 'severe or pervasive' harassment necessary to support a hostile work environment claim," she cannot meet the higher constructive discharge standard— conditions so intolerable that a reasonable person would leave the job." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (citation omitted). "To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (citation and quotation marks omitted). "Conduct that is not severe or pervasive enough to create an *objectively* hostile or abusive work environment . . . is beyond Title VII's purview." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81 (1998) (emphasis added).

Plaintiff alleges that, after years of unresolved concerns and harassment, she

---

[1] The Court notes that Plaintiff's objection claims she "otherwise would be obligated to cover" the one shift offered to a white employee. (Doc. 56 at 4.) This assertion is not in the SAC, nor has she explained what she means by being "obligated.

- 9 -

resigned because she could "no longer take discrimination" and no longer felt safe in the workplace. (Doc. 50-1 at 9–10.) Plaintiff has not alleged pervasive race-based harassment. In fact, she has not stated any racially motivated statements were made in or outside of her presence. Instead, she describes generalized micromanaging, criticism, schedule changes, and surveillance, none of which are alleged to be of a racial nature. Nor can the Court draw any inference of discriminatory intent beyond conclusory allegations. Because Plaintiff's allegations are insufficient to state a hostile work environment claim, they necessarily fail to state constructive discharge. Her voluntary resignation on these facts is not an adverse employment action attributable to actionable discrimination.

### iii.   Retaliation

The Magistrate Judge stated that retaliation may occur when an employee is discriminated against for opposing an unlawful employment practice, or for participating in a protected proceeding regarding unlawful employment practices. (Doc. 55 at 10.) Judge Kimmins stated that since Plaintiff had not alleged that she filed a Title VII charge while employed, the participation clause did not apply. (*Id.*) The Magistrate Judge indicated that the opposition clause was applicable because Plaintiff alleged she "made internal complaints to her supervisors about her treatment." (*Id.* at 11 (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)).) However, the Magistrate noted that Plaintiff "made only general allegations stating she complained to her employer about harassment" and that "she alleged she was retaliated against 'for having an opinion and filing a complaint with Human Resources.'" (*Id.* (quoting Doc. 50-1 at 10).) The Magistrate Judge concluded that Plaintiff had not shown retaliation because "[s]he did not allege in the current complaint or motion response that she complained about racial discrimination in the workplace prior to leaving her employment" and had not alleged an adverse employment action. (*Id.* at 10–11.)

A Title VII claim of retaliation requires allegations that "(1) [plaintiff] engaged in a protected activity, such as the filing of a complaint alleging racial discrimination, (2) [defendant] subjected [plaintiff] to an adverse employment action, and (3) 'a causal link exists between the protected activity and the adverse action.'" *Manatt*, 339 F.3d at 800

- 10 -

(quoting *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)). "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray*, 217 F.3d at 1243.

The Court agrees with the Magistrate Judge. Plaintiff filed a charge of discrimination on March 12, 2025, after her employment ended. (Doc. 56 at 5.) Neither the SAC nor Plaintiff's briefing alleges participation in any EEOC or Title VII proceeding while she was still employed by Defendants.

Plaintiff's objection states that "it became known that Plaintiff[']s race and color became a factor in the treatment by supervisors and managers" and that HR "got involved and was made aware of all the issues." (*Id.* at 4.) She adds that she "engaged in a protected activity by filing the initial complaint with HR regarding the treatment she endured prior and during the time she reached out to HR and continued to receive after filing the complaint. (*Id.* at 5.) Like the Magistrate noted, Plaintiff's SAC and objection to the R&R still does not allege that Plaintiff's complaint about her treatment specifically alleged that her treatment was racially motivated or shown that she suffered an adverse employment action.

III.   **OTHER ARGUMENTS**

Plaintiff appears to argue that the motion to dismiss should be denied because (1) she asked for a jury trial, (2) the Court should disregard all errors as harmless under Fed. R. Civ. P. 61, (3) Defendants have not denied the allegations under Fed. R. Civ. P. 8, and (4) Plaintiff used the Court approved form. (Doc. 56 at 2–3.) None of these arguments affect the Court's determination, nor are they applicable to the issues raised in the Motion to Dismiss.

IV.   **DISMISSAL WITH PREJUDICE**

If the plaintiff "fails to state a claim on which relief may be granted," the district court must dismiss the claim. 28 U.S.C. § 1915(e)(2)(B)(ii). But, a "complaint [filed by a pro se litigant] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). Dismissal with prejudice is appropriate if the

complaint's deficiencies cannot be cured by amendment, but if the pleading can be remedied through the addition of facts, the claimant should be granted an opportunity to amend a complaint prior to final dismissal. *Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)). However, repeated failure to cure deficiencies may affect whether justice requires granting leave to amend yet again. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). In fact, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996); *see Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("[A] district court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally.").

After Defendants' first Motion to Dismiss the Amended Complaint, the Magistrate Judge and the Court provided Plaintiff with detailed guidance on the elements of a Title VII retaliation claim and granted leave to amend. (Docs. 44, 48.) Plaintiff filed the Second Amended Complaint, but again failed to plead facts sufficient to state a Title VII claim. Because Plaintiff has had three opportunities to plead her claims and has been unable to cure the identified deficiencies, the Court finds that further amendment would be futile. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

Accordingly, IT IS ORDERED:

1) Magistrate Judge Lynnette C. Kimmins' Report and Recommendation is ADOPTED. (Doc. 55.)

2) Defendants' Motion to Dismiss is GRANTED. (Doc. 51.)

3) All claims and Defendants are DISMISSED WITH PREJUDICE.

Dated this 21st day of July, 2026.

_____

Honorable Raner C. Collins
Senior United States District Judge